# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

| | |
|---|---|
| **LITTLE ROCK FAMILY PLANNING SERVICES**, *et al.*, | **PLAINTIFFS** |
| v. | Case No. 4:19-cv-00449-KGB |
| **LESLIE RUTLEDGE, in her official capacity as Attorney General of the State of Arkansas**, *et al.*, | **DEFENDANTS** |

## ORDER

Before the Court is defendants' expedited motion to reconsider *ex parte* consolidation order (Dkt. No. 22). Plaintiffs filed a response in opposition (Dkt. No. 28). By way of background, plaintiffs filed their complaint and motion for expedited consolidation or, in the alternative, to give notice of a related case on June 26, 2019 (Dkt. Nos. 1, 3). In that motion, plaintiffs argue that this action should be consolidated with, or is related to *Planned Parenthood of Arkansas & Eastern Oklahoma v. Jegley, et al.*, Case No. 4:15-cv-00784-KGB (Dkt. No. 3). On June 27, 2019, United States District Court Judge Billy Roy Wilson granted plaintiffs' motion for expedited consolidation or, in the alternative, to give notice of a related case (Dkt. No. 14).

Defendants now ask this Court to reconsider Judge Wilson's Order, arguing that Judge Wilson abused his discretion by granting plaintiffs' motion because: (1) this matter and *Jegley* do not share any common questions of law or fact under Federal Rule of Civil Procedure 42(a) and (2) this case and *Jegley* should not be treated as "related cases" under General Order No. 39(b)(5) (Dkt. No. 23). For the reasons set forth below, the Court declines to reconsider Judge Wilson's Order and denies defendants' expedited motion to reconsider *ex parte* consolidation order (Dkt. No. 22).

## I. Related Case

The Court declines to reconsider Judge Wilson's Order to the extent his Order designated this matter as a "related case" to *Jegley*. Under General Order No. 39(b)(5), when "a party believes a new civil case should be directly assigned to a particular judge because the new case is closely related to a prior closed case and the assignment thereof to a different judge would result in a significant waste of judicial time," "the judge assigned the new case may, in his or her sole discretion, decide either to keep the new case or to notify the clerk to assign the case by random draw." This decision "is final and not subject to review." Gen. Order No. 39(b)(5). Defendants argue that a related-case designation is inappropriate here "because *Jegley* is not yet a prior closed case" and because "a related case designation would not increase efficiencies . . . ." (Dkt. No. 23, at 10 (internal quotations omitted)). In their response, plaintiffs submit that the instant case and *Jegley* involve many of the same parties and issues and that both cases will realize efficiencies in discovery and litigation, if the two matters are deemed related (Dkt. No. 28, at 8-9). Specifically, plaintiffs assert that this litigation is uniquely appropriate for related-case designation before this Court due to the substantial similarities between the contracted physician requirement at issue in *Jegley* and Arkansas Act 700 of 2019 (the "OBGYN requirement") challenged here (*Id.*, at 9).

The Court concludes that this matter is closely related to *Jegley* under General Order No. 39(b)(5). As an initial matter, plaintiffs represent in their response in opposition to defendants' motion that they requested a related-case designation as an alternative to their consolidation request to address the possibility that the *Jegley* motion to dismiss would be granted before this Court considered plaintiffs' consolidation request (Dkt. No. 28, at 8). While defendants are technically correct that *Jegley* has not yet been closed, an unopposed motion to dismiss without prejudice is pending in that matter. *See Jegley*, Dkt. No. 187. That motion represents that

defendants—who are also parties to this case—do not oppose the motion to dismiss, and the defendants in *Jegley* have not yet withdrawn their support for that motion. Accordingly, the Court finds that *Jegley* qualifies as a "prior closed case" as that phrase is defined in General Order No. 39.

Additionally, the Court finds that this matter and *Jegley* are closely related and that the assignment of this matter to this Court will result in significant savings of judicial resources. *Jegley* involved a Fourteenth Amendment challenge to two provisions of Section 1504(d) of the Abortion-Inducing Drugs Act, 2015 Arkansas Acts 577 (2015): (1) the "contracted physician requirement," which required medication abortion providers to have a signed contract with a physician with active admitting privileges and gynecological/surgical privileges at a hospital designated to handle any emergencies associated with the use or ingestion of the abortion-inducing drug; and (2) the "FPL mandate," which required medication abortion providers to satisfy the protocols set forth on the final printed label for an abortion-inducing drug. The FPL mandate issue was eventually rendered moot, but, on several different occasions, the Court applied the "undue burden" test from *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), and *Whole Women's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), to determine whether the contracted physician requirement was constitutional.

While applying the undue burden test, the Court analyzed the voluminous record evidence to determine the purported benefits of the contracted physician requirement and the burdens imposed by the same on Arkansas women. Specifically, the Court analyzed the dangerousness of first and second trimester abortions; the preexisting "continuity-of-care" requirements for private abortion providers in Arkansas; the actual benefits to the health of Arkansas women created by the contracted physician requirement; alternative sources of continuity-of-care available to Arkansas

3

women; the personal and professional risk to doctors who associate with abortion providers; the effect of the contracted physician requirement upon abortion clinics in Arkansas; and the burdens imposed upon Arkansas women by the contracted physician requirement, including a detailed description of driving distances for different populations of women living in Arkansas. *See Jegley*, Dkt. No. 144. The Court then weighed these benefits and burdens to determine whether the contracted physician requirement created an "undue burden."

In the present matter, plaintiffs challenge three recently enacted statutes: (1) Arkansas Act 493 of 2019 (the "18-Week Ban"); (2) Arkansas Act 619 of 2019 (the "Disability Ban"); and (3) Arkansas Act 700 of 2019, which codifies the OBGYN requirement. Were it not for the inclusion of the OBGYN requirement in this lawsuit, the Court might agree with defendants that there are no common issues of law or fact between this matter and *Jegley*. The OBGYN requirement, however, prohibits anyone from providing abortions in Arkansas unless they are "a physician licensed to practice medicine in the state of Arkansas" who is "board-certified or board-eligible in obstetrics and gynecology." 2019 Ark. Acts 700 § 1. A violation of this provision "may result in the revocation, suspension, or nonrenewal of the professional license of an abortion facility or physician." *Id*. The OBGYN requirement, therefore, is subject to the undue burden test as set forth in *Casey* and *Hellerstedt*. Accordingly, the evidence and issues raised in this case will substantially overlap with those considered by this Court in *Jegley*.

For example, the Court predicts that this case will require a district court to assess the dangerousness of first and second trimester abortions, the preexisting standards of care governing abortion providers in Arkansas, the personal and professional risk to doctors who associate with abortion providers, the financial burden imposed by the OBGYN requirement upon abortion providers, and the burdens imposed upon Arkansas women by the OBGYN requirement. In

4

particular, the undue burden test will require any district court to determine whether a "large fraction" of Arkansas women are burdened by the OBGYN requirement, and this assessment will require a detailed examination of the population of women in Arkansas, the ability of clinics to comply with the OBGYN requirement, and the predicted number of women who will be deterred from an abortion by the OBGYN requirement. The Court has already conducted this exercise once in *Jegley*; it is well-placed to do so again in this matter. Indeed, as described by plaintiffs, Dr. Stephanie Ho and Ms. Lori Williams—both of whom testified in *Jegley*—are key witnesses in this case. Notably, defendants' motion fails to explain how the legal and factual issues raised by the OBGYN requirement are distinct and unrelated to those raised by the contracted physician requirement in *Jegley*. Accordingly, the Court finds that this case and *Jegley* are closely related and that Judge Wilson's transfer of this matter is likely to result in significant savings of judicial resources.

## II. Consolidation Under Rule 42

The Court also concludes that consolidation is warranted here, and therefore declines to reconsider Judge Wilson's Order reassigning this case. Under Rule 42(a), a district court may consolidate actions "[i]f actions before the court involve a common question of law or fact . . . ." Fed. R. Civ. P. 42(a). Further, "[d]istrict courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 138 S. Ct. 1118, 1131 (2018) (citing 9A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2383 (3d ed.)). Per General Order No. 39, in the event a motion to consolidate is granted, the consolidated cases are assigned to the judge with the lower case number.

Plaintiffs argued to Judge Wilson that consolidation is warranted because this matter and *Jegley* share a common set of factual and legal issues, there are overlapping discovery issues and

5

witnesses, and consolidation would avoid the risk of inefficient or inconsistent rulings (Dkt. No. 23, at 1). Plaintiffs reiterate these arguments in their response in opposition to defendants' present motion (Dkt. No. 28, at 4-7). Plaintiffs submit that, in both cases, the Court must determine whether abortion regulations unduly burden the constitutionally guaranteed right to access abortion care by making factual findings as to whether any purported medical or health benefits of a challenged Act are outweighed by the significant burdens they impose on access to abortion (*Id.*, at 5). Plaintiffs assert that the application of the United States Supreme Court's balancing test in *Hellerstedt* to analyze the constitutionality of the contracted physician requirement challenged in *Jegley* and the OBGYN requirement challenged here is uniquely similar (*Id.*). According to plaintiffs, both cases require the reviewing judge to make factual findings regarding, among other things, the training and skill necessary to provide abortion care, the ability of abortion providers to recruit and retain OBGYNs in Arkansas, and the impact on women's access to care in Arkansas if the challenged restrictions were to take effect (*Id.*). Plaintiffs further argue that defendants' attempts to argue otherwise in their motion is undermined by their motion for expedited discovery which contains various discovery requests that are substantially similar to certain requests served in *Jegley* (Dkt. No. 28, at 5). Plaintiffs also note that defendants' discovery-related motion includes requests relating only to the OBGYN requirement (*Id.*, at 7).

In their present motion, defendants retort that "*Jegley* does not overlap with this case beyond the fact that they each present meritless, reflexive challenges to Arkansas laws having something to do with abortion." (Dkt. No. 23, at 6). The Court disagrees. As discussed above, the questions of law and fact raised by the OBGYN requirement overlap with the issues of law and fact decided by this Court in *Jegley*. The Eighth Circuit Court of Appeals decision in *Enterprise Bank v. Saettele*, 21 F.3d 233 (8th Cir. 1994), which is cited by defendants, is clearly

6

distinguishable. There, the Eighth Circuit reversed the consolidation of two actions brought by separate creditors against the same debtors. *Id.* at 236. In that case, "the only common factual threat running through the lawsuits was the fact that the [defendants] were defendants in both cases." *Id.* Here, plaintiffs have demonstrated that at least some of the factual evidence in this case will be similar, if not identical, to the factual evidence presented to the Court in *Jegley*. Additionally, many of the parties in this action are also parties in *Jegley*. Consolidation has been allowed in similar situations. *Horizon Asset Mgmt. Inc. v. H & R Block, Inc.*, 580 F.3d 755, 768 (8th Cir. 2009) (consolidating direct and derivative securities actions because the actions "involved common parties, overlapping legal issues, and related factual scenarios . . . .").

Accordingly, to the extent Judge Wilson's Order consolidated this matter under Rule 42 and given the common parties and overlapping legal and factual issues in this case and in *Jegley*, the Court declines to reconsider Judge Wilson's Order. The Court therefore denies defendants' expedited motion to reconsider *ex parte* consolidation order (Dkt. No. 22).

So ordered this 5th day of July 2019.

_____
Kristine G. Baker
United States District Judge