IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| LITTLE ROCK FAMILY PLANNING SERVICES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LESLIE RUTLEDGE, et al.,<br><br>    Defendants. | CIVIL ACTION<br><br>Case No. 4:19-cv-00449-KGB |

**SUPPLEMENTAL EXPERT DECLARATION OF JASON LINDO, PH.D., IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

I, Jason Lindo, Ph.D., declare the following under 28 U.S.C. § 1746 and penalty of perjury:

1.  I submit this supplemental declaration in support of Plaintiffs' motion for a temporary restraining order and/or preliminary injunction against enforcement of Arkansas Act 700 (the "OBGYN Requirement"), in addition to other statutes scheduled to go into effect on July 24, 2019.

2.  Plaintiffs' counsel informed me that during the week of July 1, 2019, PPAEO Fayetteville stopped providing medication abortions in anticipation of its lease ending July 31, 2019. Although I understand that PPAEO Fayetteville intends to re-open as soon as possible in a new location, Plaintiffs' counsel asked me to evaluate the effect of the OBGYN Requirement, under the current changed circumstances where PPAEO Little Rock and LRFP are the only providers of abortion care in the State. I understand that PPAEO Little Rock's and LRFP's provision of abortion care in Arkansas is unchanged since the assumptions described in my June

1

22, 2019 report, and I incorporate here by reference the methodology, assumptions, and analysis described in my original report, all of which remain unchanged unless specified below.

    3.    I have evaluated the effect of the OBGYN Requirement in these changed circumstances under three different scenarios:

    a. **No OBGYN Requirement.** Drs. Tvedten, Horton, Hopkins, Rodgers, and Cathey all continue to provide abortions.

    b. **OBGYN Requirement Scenario A.** LRFP is forced to close. Providers include Drs. Rodgers and Cathey, who continue to provide medication abortions at PPAEO Little Rock.

    c. **OBGYN Requirement Scenario B.** LRFP is able to stay open, thus allowing Dr. Hopkins to provide abortions every other month. Providers include Drs. Hopkins, in addition to Drs. Rodgers and Cathey, who continue to provide medication abortions at PPAEO Little Rock.

    4.    If the OBGYN Requirement goes into effect in Arkansas on July 24, 2019, even in these changed circumstances where PPAEO Fayetteville is not providing medication abortions, it will still dramatically reduce the degree to which abortions can be obtained in Arkansas. Under OBGYN Requirement Scenarios A and B, a maximum of 402-654 women would be able to obtain the same type of abortion care in Little Rock (where LRFP and PPAEO Little Rock are located) that they otherwise would, absent the OBGYN Requirement. This range falls far short of the number of women currently obtaining abortion care in Little Rock annually (2,614), meaning that at least 75-85% of the women who seek abortion care in Little Rock on an annual basis will no longer be able to access the same care that they would absent the OBGYN Requirement. And 62-70% of the 3,167 women who have historically obtained abortion care in

Arkansas annually, including those who obtained care at PPAEO Fayetteville, will no longer be able to access the same care that they would absent the OBGYN Requirement.

5. The shortage would be particularly severe for surgical abortions, for which the levels of access would be no different than the scenarios described in my original report. Only 0-252 women will be able to obtain surgical abortions in Arkansas annually if the OBGYN Requirement goes into effect, compared to the 2,212 women currently obtaining surgical abortions in Arkansas annually. Even in the best-case scenario possible under the OBGYN Requirement (i.e., the scenario where the highest possible number of women are able to access the same care they would otherwise seek), only approximately 11% of the women who currently obtain surgical abortions in Arkansas annually will be able to continue doing so.

6. As a result of these substantial shortages, a large number of women will have to attempt to travel to out-of-state providers to access care. As I explained in my original report, rigorous, peer-reviewed economic literature, and research that I performed for this case on access to abortion care in the wake of a 2018 Arkansas medication-abortion regulation, demonstrate that the increase in travel distance will further reduce abortion rates.

**Revised Estimates of Lost Capacity Expected from OBGYN Requirement**

7. The figure and table below are revised versions of those discussed in ¶¶ 43-44 of my original report. They highlight that even in these changed circumstances, the number of abortions historically provided by physicians who will be forced to stop providing abortions by the OBGYN Requirement is extremely large relative to the number of abortions historically provided by physicians that may continue providing abortions under the OBGYN Requirement. Drs. Tvedten and Horton have historically provided approximately 69% of the abortions in this state.

**Figure 1**



**Table 1**
**Abortions provided in Arkansas by various groups of physicians**
**Based on data 5/1/16-4/30/19[1]**

|  | Abortions Annually | Abortions Monthly | Share of Current |
|---|---|---|---|
| All physicians | 3,167 | 264 |  |
| Current physicians | 2,614 | 218 | 100.0% |
| Current physicians forced by regulation to stop | 2,193 | 183 | 69.2% |
| Current physicians allowed to continue | 408 | 34 | 12.9% |

**Approach to Evaluating Effects Under Current Changed Circumstances**

8.  In order to ensure that I do not attribute effects of the changed circumstances (PPAEO Fayetteville not currently offering abortion) to the effects of the OBGYN Requirement, in this supplemental report I focus on women who have historically been served by LRFP and

---

[1] As in my original report, the number of abortions provided do not quite sum together as one would expect because of 33 abortions provided at LRFP from 1/14/2017-1/20/2017 by Dr. Goodenough (a family medicine resident who I understand received training at LRFP), 2 by Dr. Edwards (who I understand recently passed away), and 5 records for which I could not determine the physician.

PPAEO Little Rock. In particular, I focus on the 2,614 women annually served at these two locations over the past three years. In so doing, I provide a conservative estimate of the effect of the OBGYN Requirement (meaning that I am likely understating its effect on women's ability to access abortion care in Arkansas), because more than 2,614 women would likely seek abortions in Little Rock annually, so long as medication abortions are not available at PPAEO Fayetteville. In other words, without PPAEO Fayetteville as an option, we would expect some portion of the 553 women who have obtained medication abortions in Fayetteville annually over the past three years to travel to providers outside of Arkansas, some to be prevented from obtaining abortions due to increases in travel distance, and some to seek abortions in Little Rock. Because my below analysis does not account for the likely effects of the OBGYN Requirement on women in the final category, it understates the OBGYN Requirement's aggregate effect.

9. In Table 1 and Table 2 below, I summarize the capacity of LRFP and PPAEO Little Rock to provide abortions, which I draw on in my discussion below.

**Table 2**
Maximum annual capacity of Arkansas abortion providers under different scenarios

|  | LRFP | | | PPAEO Little Rock | | Arkansas |
| --- | --- | --- | --- | --- | --- | --- |
|  | Tvedten | Horton | Hopkins | Rodgers | Cathey | Total |
| *No OBGYN Req., Not Inc. Fayetteville* | 2028 | 1428 | 252 | 480 | 476 | 4664 |
| OBGYN Req. Scenario A | 0 | 0 | 0 | 480 | 476 | 956 |
| OBGYN Req. Scenario B | 0 | 0 | 252 | 480 | 476 | 1208 |

**Table 3**
Maximum annual capacity of Arkansas abortion providers under different scenarios

|  | All Types | Surgical |
| --- | --- | --- |
| *No OBGYN Requirement, Not Inc. Fayetteville* | 4664 | 3708 |
| OBGYN Req. Scenario A | 956 | 0 |
| OBGYN Req. Scenario B | 1208 | 252 |

**Table 4**
2,614 Women Who Obtain Abortions in Little Rock Annually
(2,212 Surgical and 402 Medication)

|  | # potentially able to obtain same type of care in AR | # not able to obtain same type of care in AR |
|---|---|---|
| OBGYN Req. Scenario A | 402 (15%) | 2,212 (85%) |
| OBGYN Req. Scenario B | 654 (25%) | 1,960 (75%) |

**OBGYN Requirement Scenario A**

10. As I explained in my original report, surgical abortions will no longer be available in Arkansas if LRFP is forced to shut down. Thus, none of the 2,212 women who annually obtain surgical abortions in Arkansas will be able to do so under OBGYN Requirement Scenario A.[2] As such, 2,212 (85%) of the 2,614 women who obtain abortions in Little Rock annually will not be able to obtain the same type of care in Arkansas that they otherwise would, absent the OBGYN Requirement. And 2,212 (70%) of the 3,167 women who have historically obtained abortion care in Arkansas annually (including at PPAEO Fayetteville) will not be able to obtain the same type of care in Arkansas that they otherwise would, absent the OBGYN Requirement.

11. In my original report, I explained that even if one assumes that some of LRFP's surgical-abortion patients could obtain medication-abortion care because they are less than 10 weeks LMP, there would still be a substantial portion of women unable to obtain *any* type of abortion care in Arkansas, given the capacity constraints of the medication-abortion providers in the state. *See* fn. 58. My original report assumed, however, that Arkansas medication-abortion providers could provide up to 1,580 medication abortions annually. Under the changed circumstances, where no medication abortions are currently provided in Fayetteville, there will

---

[2] Given its capacity, PPAEO Little Rock would be able to provide medication abortions to the 402 women who have historically obtained medication abortions in Little Rock at either LRFP or PPAEO Little Rock.

be an even higher number of women unable to access any type of care in the state.  Specifically, I estimate that LRFP and PPAEO Little Rock currently have the capacity to provide up to 4,664 abortions annually.  Under OBGYN Requirement Scenario A, that number will fall to 956.  Thus, 1,658 (63%) of the 2,614 women who otherwise would obtain care in Little Rock annually will not be able to access any type of abortion care in Arkansas.  And 1,658 (52%) of the 3,167 women who have historically obtained abortion care in Arkansas annually (including at PPAEO Fayetteville) will not be able to access any type of abortion care in the state.

**OBGYN Requirement Scenario B**

12.     As I explained in my original report, my capacity estimates only increase by 252 patients under a scenario in which the OBGYN Requirement goes into effect and LRFP does not close, because Dr. Hopkins is the only additional physician who will be able to provide abortions under this scenario.  While it would represent an increase in the availability of surgical abortions from 0 to 252 over OBGYN Requirement Scenario A, this is an extremely small number (11.4%) relative to the number of women who have typically obtained surgical abortions in Little Rock each year (2,212).  Thus, the numbers for OBGYN Requirement Scenario B, in which LRFP stays open with Dr. Hopkins providing care, are very similar to the numbers that I provided above for OBGYN Requirement Scenario A.

13.     Under OBGYN Requirement Scenario B, all but 252 of the women who would otherwise seek abortion care after 10 weeks LMP, or a surgical abortion before 10 weeks LMP, would have no provider in Arkansas.  As such, 1,960 (75%) of the 2,614 women who obtain abortions in Little Rock annually will not be able to obtain the same type care in Arkansas that they would otherwise seek, absent the OBGYN Requirement.  And 1,960 (62%) of the 3,167 women who have historically obtained abortion care in Arkansas annually (including at PPAEO

Fayetteville) will not be able to obtain the same type of care in Arkansas that they otherwise would, absent the OBGYN Requirement.

14. Accounting for the possibility that PPAEO Little Rock could provide up to 956 medication abortions annually, and certain surgical-abortion patients who are less than 10 weeks LMP may be willing to have a medication abortion instead, 1,406 (54%) of the 2,614 women who otherwise would obtain care in Little Rock annually will not be able to access any type of abortion care in Arkansas.  And 1,406 (44%) of the 3,167 women who have historically obtained abortion care in Arkansas annually (including at PPAEO Fayetteville) will not be able to obtain any type of abortion care in the state.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this **9th** day of July, 2019

*Jason Lindo*

Jason Lindo, Ph.D.