**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

LITTLE ROCK FAMILY PLANNING SERVICES, et al.,

Plaintiffs,

v.

LESLIE RUTLEDGE, in her official capacity as Attorney General of the State of Arkansas, et al.,

Defendants.

CIVIL ACTION

Case No. 4:19-cv-00449-KGB

**LRFP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR EXPEDITED PRELIMINARY-INJUNCTION-PROCEEDING DISCOVERY AND MOTION TO QUASH *JEGLEY* DEPOSITION NOTICE**

## INTRODUCTION[1]

The relevant question pending before the Court is whether the LRFP Plaintiffs have demonstrated that the OBGYN Requirement is unconstitutional under binding Supreme Court precedent because it confers little-to-no medical or safety benefit, and yet imposes an enormous burden on women's ability to access abortion.[2] Because the LRFP Plaintiffs easily showed as much in their papers and at the July 22, 2019 hearing, Defendants now attempt to construct an alternate reality in which PPAEO—which is not a movant on the motion before the Court—can fill the enormous void in care that would be caused by the OBGYN Requirement. But the record is undisputed that PPAEO has an insufficient number of abortion providers to do so, and no facility that meets the standards imposed by the State on surgical-abortion providers. Neither of these facts are surprising, given the immense stigma associated with abortion care in Arkansas, and the State's recent campaign against abortion, which has severely restricted providers' already-limited ability to provide the medical care that women seek. Nor should the Court indulge Arkansas's Hail Mary request for information on *out-of-state* providers—Arkansas women's ability to obtain out-of-state care is irrelevant under the applicable legal standard. Moreover, it is wholly disingenuous of the State to simultaneously claim that (i) abortion is unsafe when provided by non-OBGYNs, and (ii) Arkansas women who cannot access in-state care because of the OBGYN Requirement should obtain abortions in states where non-OBGYNs routinely provide care.

---

[1] This brief refers to (i) Plaintiffs Little Rock Family Planning and Dr. Thomas Tvedten as the "LRFP Plaintiffs"; and (ii) Defendants' motion for expedited preliminary-injunction-proceeding discovery as the "Mot." Unless otherwise indicated, all internal quotations and citations are omitted and all emphasis is added.

[2] This Court also has pending before it the question of whether the 18-Week and Reason Ban are unconstitutional, but Defendants' discovery requests relate only to Plaintiffs' challenge to the OBGYN Requirement.

Because there is no good cause for the discovery that Defendants seek, Plaintiffs respectfully request that the Court deny their request for it, and also quash the Deposition Notice that Defendants improperly served in *Jegley*.

**BACKGROUND**

***PPAEO Withdrew From The TRO/PI Motion.***

PPAEO and PPAEO physician Dr. Stephanie Ho are Plaintiffs in this case, and they originally joined the LRFP Plaintiffs in seeking emergency relief from enforcement of the OBGYN Requirement. *See generally* Pls.' Mot. for Temporary Restraining Order and/or Preliminary Injunction, Dkt. No. 2 ("TRO/PI"). On July 6, 2019, however, PPAEO withdrew from Plaintiffs' TRO/PI motion. *See* Dkt. No. 32. Because PPAEO Fayetteville is currently experiencing unanticipated issues with its lease, PPAEO Fayetteville and Dr. Ho are not providing any abortion care, and thus do not need emergency relief from the OBGYN Requirement's enforcement. *See* Dkt. No. at 32-1.[3]

***It Is Beyond Dispute That PPAEO Does Not Provide Surgical Abortion Care In Arkansas.***

The record evidence in this case demonstrates definitively that PPAEO does not and cannot provide surgical abortion care in Arkansas:

*PPAEO Fayetteville*

Before the PPAEO Fayetteville health center stopped providing abortion care earlier this

[3] PPAEO's withdrawal from the emergency-relief motion does not impact the LRFP Plaintiffs' ability to obtain facial relief from the OBGYN Requirement, based on their showing that the OBGYN Requirement will affect a "large fraction" of Arkansas women. *See* TRO/PI 39-47; Temporary Restraining Order, Dkt. No. 83, at 148, 153-56; *see also Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016) (holding facial relief warranted because Plaintiffs met large-fraction standard, even where some providers not affected by restrictions at issue); *Planned Parenthood Ark. & E. Okla. v. Jegley*, 864 F.3d 953, n.9 (8th Cir. 2017).

month, it provided only medication abortions up to 10 weeks LMP.[4] As Dr. Ho explained, "[s]urgical abortions [could] not be performed at the Fayetteville health center because that health center does not meet the additional requirements imposed by the state on facilities where surgical abortions are performed."[5] Although PPAEO currently has several live possibilities for properties where PPAEO Fayetteville could re-open and provide medication abortions,[6] none meet the additional building requirements imposed by the State for surgical-abortion providers.[7]

*PPAEO Little Rock*

Dr. Janet Cathey, one of the two OBGYNs who provide abortion care at PPAEO Little Rock, explained that PPAEO's current Little Rock health center likewise provides only medication abortions, because it does not satisfy the additional building requirements imposed by the State for surgical abortion providers.[8] Although PPAEO Little Rock is about to move to a new location, PPAEO CEO Dr. Brandon Hill noted that PPAEO "struggled to find a facility that [it] could lease," "encounter[ing] a number of landlords who were not willing to lease to Planned Parenthood."[9] PPAEO eventually identified a property for sale by an owner who is supportive of PPAEO's work, but PPAEO "cannot provide surgical abortions at the new location," again because of the building requirements imposed on surgical-abortion providers.[10]

---

[4] Ho Decl. ¶ 9.

[5] Ho Decl. ¶ 10.

[6] Hill Decl. ¶ 6.

[7] At the Court's or Defendants' request, Plaintiffs will provide a declaration from PPAEO CEO Brandon Hill averring that this is true.

[8] Cathey Decl. ¶ 4.

[9] Supplemental Hill Decl. ¶ 3.

[10] *Id.* ¶ 5.

***Defendants Subpoenaed A PPAEO Physician For Testimony At The July 22, 2019 Hearing.***

On July 9, 2019, Defendants subpoenaed Dr. Cathey for testimony at the July 22, 2019 hearing. Plaintiffs did not move to quash, and Dr. Cathey appeared to testify without objection. Defendants asked Dr. Cathey *no* questions about (i) PPAEO Little Rock's new facility and its anticipated changes in patient volume, (ii) the possibility of PPAEO providing surgical-abortion care in Arkansas, (iii) the building requirements imposed by the State on surgical-abortion providers, or (iv) the capacity of PPAEO providers to perform abortion care.[11] Instead, Defendants used their time to ask Dr. Cathey only a handful of questions regarding whether she asks about a woman's reasons for seeking abortion care.[12]

Consistent with Dr. Hill's sworn statements, Dr. Cathey reiterated on cross examination by Plaintiffs that PPAEO will not be able to provide surgical-abortion care at its new Little Rock facility.[13] She also explained, consistent with Dr. Hill's testimony,[14] that even though the new facility will enable PPAEO to see more patients (PPAEO provides Arkansas residents with a range of health-care services, including gynecological care, STD testing, and transgender care[15]), the new facility will not enable PPAEO to see more abortion patients, because PPAEO has not recruited additional abortion providers.[16] Defendants declined to ask Dr. Cathey *any* questions

[11] *See* July 22, 2019 Tr. at 199-202.

[12] *See id.* at 200-01 ("[I]f a pregnant woman came to see you for treatment in your clinic and she told you that she wanted an abortion because her spouse or perhaps another close family member was a transgender person and she did not want to raise a transgender baby, [would you] abort that baby?").

[13] *See id.* at 204 (Q: Do you know whether they'll be able to provide surgical abortions at that facility? A: Absolutely will not be able to).

[14] Supplemental Hill Decl. ¶ 6.

[15] *See, e.g.,* Cathey Decl. ¶ 8; *see also* Ho Decl. ¶ 9.

[16] *See* July 22, 2019 Tr. at 204 (Q: And do you know whether Planned Parenthood has recruited additional abortion providers to provide at that facility? A: No, not to my knowledge, and I think I would know that). This is not for want of trying. Plaintiffs showed, for example, that PPAEO undertook

on these topics, even though they were invited to do so by the Court.[17]

***Plaintiffs Correct The Record After The July 22, 2019 Hearing Regarding Dr. Lindo's Abortion-Care Reliance Materials.***

Also during the July 22 hearing, Plaintiffs' expert Dr. Jason Lindo testified about his conclusions that if the OBGYN Requirement is enforced (i) 62-70% of women who have historically obtained abortions in Arkansas will not be able to obtain the same care, and (ii) 89-100% of women will no longer be able to access surgical-abortion care in Arkansas.[18] Defendants attempted to undermine his testimony by pointing out that the historical abortion-care data that Plaintiffs provided Defendants shows that Dr. Fred Hopkins, LRFP's only board-certified OBGYN, provided 28 abortions on April 28, 2018, contrary to Dr. Lindo's assumption that Dr. Hopkins never performed more than 21 procedures on a given day.[19]

On the morning of July 23, Plaintiffs submitted a Notice of Correction supported by a sworn statement by Dr. Lindo explaining that due to a Microsoft Excel merging error by Plaintiffs' counsel, the LRFP abortion-care data provided to Defendants by Plaintiffs contained duplicate entries for April 2018, which wrongly doubled the number of procedures provided that month. *See* Dkt. No. 79. Defendants moved to strike later that same day (*see* Dkt. No. 80), but nowhere questioned the veracity of Plaintiffs' merging-error explanation.

---

extensive efforts to identify additional abortion providers after the OBGYN Requirement was passed but, like LRFP, received little-to-no interest. *See*, *e.g.*, Ho Decl. ¶¶ 21-32.

[17] *See id.* at 204-05.

[18] July 22, 2019 Tr. at 131.

[19] *Id.* at 114.

***The Court Enters A Temporary Restraining Order Barring The Three Challenged Restrictions From Taking Effect.***

On July 23, 2019, the Court entered a 14-day TRO preventing all three challenged restrictions from taking effect. *See* Dkt. No. 83. In entering a TRO rather than a preliminary injunction, the Court noted the post-hearing July 23 filings, and found that Defendants have not yet had a sufficient opportunity to challenge Plaintiffs' requested relief. *See id.* at 5.

***Defendants Serve Supplemental Discovery Requests Relating Only To PPAEO And Out-Of-State Providers.***

On July 25, 2019, Defendants filed a motion seeking expedited, pre-preliminary-injunction documents, information, and testimony that have nothing to do with the LRFP Plaintiffs' provision of abortion care. *See* Dkt. No. 86. Specifically, Defendants seek (i) documents, information, and testimony regarding the increased volume of patients that PPAEO can see at its new Little Rock health center (Interrogatory No. 1, RFP No. 1, Rule 30(b)(6) Deposition Notice), (ii) testimony regarding PPAEO's efforts to comply with any and all of Arkansas' abortion restrictions (Rule 30(b)(6) Deposition Notice), (iii) documents and testimony regarding PPAEO's search for a new facility in Fayetteville (RFP 2, Rule 30(b)(6) Deposition Notice), (iv) the capacity of PPAEO's providers to perform abortions (Rule 30(b)(6) Deposition Notice), and (v) PPAEO's inability to provide surgical-abortion care in Fayetteville and Little Rock (Interrogatory Nos. 2-3 and RFP 1-4) (together, the "PPAEO Discovery Requests"). Defendants also seek information and testimony regarding the number of out-of-state abortions obtained by Arkansas residents at unspecified health centers in Oklahoma, Missouri, Texas, Tennessee, Mississippi, Louisiana, and Kansas (Interrogatory No. 4, Rule 30(b)(6) Deposition Notice). Finally, Defendants served a Notice of Deposition in the *Jegley* litigation that is

substantively identical to that served in this case.[20] Defendants made no effort to meet and confer with Plaintiffs before filing their motion.

Although Defendants again complain that Plaintiffs have not sent them the abortion-care data on which Dr. Lindo relied in the exact same format it was sent to Dr. Lindo (and again cite no authority supporting that request), they identify no issue with Plaintiffs' merging-error explanation for the discrete, April 2018 discrepancies identified at the hearing. *See id.*

## ARGUMENT

### I. THE COURT SHOULD DENY DEFENDANTS' EXPEDITED-DISCOVERY REQUESTS.

#### A. Defendants' Repeated Violation of the Local Rules Warrants Denying Their Motion.

As an initial matter, the Court should reject Defendants' motion for expedited discovery because they *again* flouted Local Rule 7.2(g)'s requirement that they meet and confer with Plaintiffs before moving to compel discovery. Rule 7.2(g) states that if any discovery motion lacks a statement that the parties have conferred in good faith, "that motion may be dismissed summarily for failure to comply with this rule." "Repeated failures to comply," as is the case here (Defendants likewise failed to meet and confer before filing their first motion for expedited discovery), "will be considered an adequate basis for the imposition of sanctions."

#### B. There Is Not Good Cause For The Discovery That Defendants Seek.

As this Court recently observed in evaluating Defendants' first expedited-discovery requests, a district court has broad discretion regarding discovery motions. *See United States v. Washington*, 318 F.3d 845, 857 (8th Cir. 2003); *see also* Dkt. No. 42 at 2. The purpose of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the

[20] Exhibit 1.

merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camensich*, 451 U.S. 390, 395 (1981). In fact, the court can rule on a preliminary-injunction motion based on evidence provided only in sworn affidavits. *See Hoegne v. Kerns*, 47 F. App'x 796, 797 (8th Cir. 2002) (observing "[i]t was not necessary for [the district court] to hold an evidentiary hearing, and it did not abuse its discretion by granting the preliminary injunction motion on the basis of affidavits"); *Wounded Knee Legal Defense/Offense Comm. v. F.B.I.*, 507 F.2d 1281, 1286–87 (8th Cir. 1974) ("[I]it has often been held that affidavits may be received at a hearing on a motion for a preliminary injunction."); *see also* Dkt. No. 42 ("[T]he Court has taken into account that it is not bound to hold an evidentiary hearing on plaintiffs' motion for a [TRO] and/or [PI] and could rule on such a motion based only upon submitted affidavits) (citing *Hoehne*, 47 Fed. App'x at 797).

Thus, at the preliminary-injunction stage, "'[*e*]*xpedited discovery is not the norm*.'" *Dorrah v. United States*, 282 F.R.D. 442, 445 (N.D. Iowa 2012) (quoting *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D. Ill. 2000)). As this Court recently observed, "the party seeking discovery must demonstrate that the need for expedited discovery, in consideration of the administration of justice, outweighs prejudice to the responding party." *Nilfisk, Inc. v. Liss*, 2017 WL 7370059, at *7 (D. Minn. Jun. 15, 2017); *see also* Dkt. No. 42 at 3. The court must therefore "examine the entirety of the record to date and the reasonableness of the request for expedited discovery in light of surrounding circumstances." *Id.* Accordingly, courts routinely deny or severely restrict preliminary-injunction-stage discovery requests that are burdensome, overly broad, and not essential to the court's evaluation of the motion. *See, e.g.*,

*Gillespie*, 2018 WL 1904845, at *2 (denying motion for expedited discovery that would be "overly burdensome and unreasonably costly"); *Arab Am. Civil Rights League v. Trump*, 2017 WL 5639928, at *4 (E.D. Mich. Mar. 31, 2017) (denying plaintiffs' preliminary-injunction-stage discovery request because discovery not clearly "essential" and any need for information substantially outweighed by burden on defendants to produce information at early stage); *BCBSM, Inc. v. Vazquez*, 2014 WL 12778827, at *5 (D. Minn. July 25, 2014) (denying expedited-discovery request where the requests were "overly broad" and "more appropriately flushed out later during the course of ordinary discovery").

As detailed below, the Court should deny Defendants' requests because (i) there is no justification for the PPAEO Discovery Requests, and (ii) Defendants' request for information relating to out-of-state abortion providers is improper and burdensome, and seeks plainly irrelevant information. The Court should also quash the *Jegley* Notice of 30(b)(6) Deposition, because there is no need for discovery in *Jegley*, and Plaintiffs cannot use *Jegley* to circumvent the obvious infirmities with the discovery requests in this case.[21]

*1. There Is No Justification For The PPAEO Discovery Requests.*

There are at least three reasons why the Court should reject the PPAEO Discovery Requests. *First*, the PPAEO Discovery Requests are completely irrelevant to the issues presented by *the LRFP Plaintiffs'* motion for a preliminary injunction. Because PPAEO is not seeking emergency relief from the OBGYN Requirement, the issues pending before the Court are *the LRFP Plaintiffs'* ability to comply with the OBGYN Requirement (they cannot, *see*, *e.g.*, TRO/PI Mot. at 39-47), and the impact on women seeking abortions in Arkansas if the OBGYN

[21] Plaintiffs incorporate here by reference their previously lodged objections to Defendants' definitions of "PPAEO" and "LRFP." Plaintiffs also expressly reserve the right to assert additional responses and objections to these discovery requests.

Requirement is enforced and *LRFP* is unable to provide care (it would devastate access in the state, *see*, *e.g.*, *id.*). To the extent that Defendants are suggesting that the LRFP Plaintiffs overstate the impact of a statute precluding LRFP non-OBGYNs Dr. Tvedten and Dr. Horton from providing care because PPAEO could fill the surgical-abortion void if LRFP closes, Defendants' suggestion finds no basis in the undisputed factual record of this case. Plaintiffs have repeatedly demonstrated through live testimony and sworn declarations that PPAEO cannot provide surgical abortions, given (among other things) their limited number of providers and facility limitations. *See supra* 2-3.

*Second*, after burdening Dr. Cathey with a subpoena that kept her in Court and away from her patients all day on July 22, Defendants simply chose not to ask about any of the issues on which they now seek discovery, including PPAEO's ability to provide surgical-abortion care in Arkansas, capacity at the new Little Rock health center, or capacity of PPAEO's providers. *See supra* 4. PPAEO should not be forced at this stage of the case to prepare and produce a witness for a deposition regarding irrelevant topics on which Defendants already had an opportunity to obtain testimony.

*Third*, the requests for production are enormously burdensome. For example, RFP No. 2 seeks all documents (including text messages, e-mails, and correspondence) that relate in any way to any extent and for any reason to PPAEO's efforts to find a new location in Fayetteville. RFP No. 3 seeks all documents that relate in any way to any extent and for any reason to (i) PPAEO's "efforts to raise funds for" a new Little Rock facility, (ii) "plans to transition its Little Rock operations," or (iii) "operational plans" for the new facility, including business plans and building-floor plans. Even if these requests sought relevant information (which they do not, *see supra*), there is not sufficient time in the fourteen-day period before the TRO expires (let alone

between now and July 30, the date by which Defendants demand the production, *see* Dkt. No. 86) to collect, review, and produce these documents, which necessarily will span multiple custodians and document-storage locations. Defendants do not attempt to justify the breadth of these irrelevant requests, which should be rejected.

*2. Defendants' Request For Information From Out-Of-State Abortion Providers Is Defective For Several Reasons.*

There are at least four reasons why Defendants' request for information regarding out-of-state abortion providers should be rejected.

*First*, the request is unduly vague. Defendants nowhere specifically identify the abortion providers that they intend for Plaintiffs to address in their response to Interrogatory No. 4, instead vaguely referencing "abortion facilities in States bordering or near Arkansas" that "PPAEO and/or related parties operate—or in the last five years has operated."

*Second*, and assuming that Defendants' intent is to obtain records from Planned Parenthood affiliates in other States, the request is procedurally improper. PPAEO (i.e., Planned Parenthood *of Arkansas and Eastern Oklahoma*) owns no health-care facilities where abortions are provided in Missouri, Texas, Tennessee, Mississippi, Louisiana, or Kansas. Thus, the highly confidential abortion-care records at any health centers in those states are not in PPAEO's possession, custody, or control, and PPAEO has no authority to produce them. *See* Fed. R. Civ. P. 34; *see also Acosta v. La Piedad Corp.*, 894 F.3d 947, 952 (8th Cir. 2018) (corporation cannot be ordered to produce affiliate's documents absent showing that corporation has "access to these documents and the ability to obtain them for its usual business").

*Third*, Defendants have provided no compelling argument as to why the requested out-of-state provider information is relevant to this litigation. Defendants claim that the information is relevant to "the distances Plaintiffs' expert [Jason Lindo] claims Arkansas women will have to

drive in order to obtain an abortion under the assumptions Plaintiffs have instructed him to make." Mot. at 1. That makes no sense. Dr. Lindo identified in his declaration the nearest cities to Fayetteville and Little Rock with abortion providers (Memphis, Shreveport, Tulsa, Jackson, Dallas, and Wichita), and estimated roundtrip driving distances to many of those locations.[22] Information on the specific number of abortions historically obtained by Arkansas residents at those facilities is not necessary to test Dr. Lindo's opinions on these issues. In fact, information about the historical rates at which Arkansas women have traveled out of state for care has nothing to do with the rate at which women would have to do so going forward, if the OBGYN Requirement takes effect. And driving-distance information is publicly and equally available to Defendants.

To the extent that Defendants seek information regarding out-of-state providers to support their argument that if LRFP closes, Arkansas women can simply travel out of state to access care, the argument (i) finds no support in the law and, (ii) only illustrates the absence of any benefit associated with the OBGYN Requirement. Plaintiffs showed in their emergency-relief papers that "[a] state cannot lean on its sovereign neighbors to provide protection of its citizens' federal constitutional rights," *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 457 (5th Cir. 2014), including abortion rights. *See* TRO/PI at 45-46. Indeed, this Court already "decline[d] to consider out-of-state abortion providers" in its analysis regarding whether the OBGYN Requirement imposes an unconstitutional undue burden on women seeking access to abortion in Arkansas, Dkt. No. 83 at 143-45, and cited numerous authorities showing that "no State can be excused from performance [of its constitutional obligations] by what another state may do or fail to do," *id.* at 144 (citing *State of Missouri ex rel. Gaines v. Canada*, 305 U.S. 337,

[22] Lindo Decl. Table 1; *see also* ¶ 67.

350 (1938). And Arkansas's attempt to point its citizens to providers in states that have no OBGYN Requirement is entirely at odds with its assertion that the OBGYN Requirement is necessary to protect them. Indeed, it could not be more ironic that the State is defending an OBGYN Requirement that would force LRFP's Dr. Horton to stop providing care at LRFP, while at the same time insisting that the OBGYN Requirement is not unduly burdensome because Arkansas women could simply travel across the border to Tennessee, where Dr. Horton also provides care.[23]

*Finally*, the request for five years of highly confidential patient information from multiple, unidentified providers in seven different states, which may be protected from disclosure under the Health Insurance Portability and Accountability Act ("HIPAA"), is an exceptionally burdensome fishing expedition for irrelevant patient information. It is particularly intrusive when considered alongside Defendants' repeated failure at the July 22 hearing to comply with their confidentiality obligations under the Protective Order, and recent Friday-afternoon threat to unilaterally release confidential LRFP and PPAEO patient data.[24] It should be rejected for that reason alone.

*3. The Court Should Quash The Notice Of Deposition That Defendants Served In Jegley.*

Defendants served in *Jegley* a 30(b)(6) Deposition Notice seeking testimony regarding PPAEO's (in)ability to provide surgical-abortion care in Arkansas in implicit recognition that they have no reasonable basis on which to request that information in *this* case. The Court should reject Defendants' attempt to circumvent the discovery rules, and quash the Notice, because there is simply no need for any discovery in *Jegley*. As the Court has previously

[23] Horton Decl. ¶ 2.

[24] This threat is addressed in the emergency motion that Plaintiffs filed earlier today.

observed, the pending, unopposed motion to dismiss in that matter means that "*Jegley* qualifies as a 'prior closed case' as that phrase is defined in General Order No. 39." Dkt. No. 29 at 2–3. Defendants nowhere explain why they need discovery in a case they agree should be dismissed. And even if the testimony sought was not completely mooted by the pending motion to dismiss, the Deposition Notice is identical to the Deposition Notice that Defendants served in this case, which Plaintiffs address above. *See supra* 9-11.

**CONCLUSION**

For all of the reasons stated above, the Court should deny Defendants' motion for expedited preliminary-injunction-proceeding discovery, and quash the *Jegley* Rule 30(b)(6) Notice of Deposition.

Dated: July 29, 2019

Respectfully submitted,

Leah Godesky*
Kelly Scavone*
Attorneys for Plaintiffs
O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, New York 10036
lgodesky@omm.com
kscavone@omm.com
Tel: (212) 326-2254
Fax: (212) 326-2061

Kendall Turner*
Attorney for Plaintiffs
O'Melveny & Myers LLP
1625 Eye St. NW
Washington, DC 20006
(202) 383-5300
kendallturner@omm.com

Taylor Simeone*
Attorney for Plaintiffs
O'Melveny & Myers LLP
1999 Avenue of the Stars

Los Angeles, CA 90067
tsimeone@omm.com
(310) 553-6700

Meagan Burrows*
Susan Talcott Camp*
American Civil Liberties Union Foundation
125 Broad St, 18th Floor
New York, NY 10001
mburrows@aclu.org
tcamp@aclu.org
(212) 549-2633
*Attorneys for Plaintiffs LRFP and Dr. Thomas Tvedten*

Maithreyi Ratakonda*
Planned Parenthood Federation of America
123 William St., 9th Fl.
New York, NY 10038
mai.ratakonda@ppfa.org
(212) 261-4405

*Attorney for Plaintiffs PPAEO and Dr. Stephanie Ho*

** Motion for admission pro hac vice granted*

Bettina Brownstein (AR Bar No. 85019)
Bettina E. Brownstein Law Firm
904 West 2nd Street, Suite 2
Little Rock, AR 72201
(501) 920-1764 – Telephone
bettinabrownstein@gmail.com

*On Behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorney for Plaintiffs*

Rebecca Rhodes Jackson (AR Bar No. 2017079)
904 West 2nd Street
Little Rock, AR 72201
(314) 440-6265 – Telephone
beckywesth@gmail.com

*On Behalf of the Arkansas Civil Liberties Union Foundation, Inc.*
*Attorney for Plaintiffs LRFP and Dr. Thomas Tvedt*