### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**LITTLE ROCK FAMILY PLANNING SERVICES**, *et al.*,   **PLAINTIFFS**,

v.   Case No. 4:19-cv-00449-KGB

**LESLIE RUTLEDGE**, in her official capacity as
Attorney General of the State of Arkansas, *et al.*,   **DEFENDANTS**.

### RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

On August 1, 2019, Plaintiffs violated this Court's protective order by publicly filing information that Defendants designated Confidential. *See* DE 109 (Defendants' Motion to Strike). That filing was part of a pattern that began with Plaintiffs' second filing in this case containing personal information that was later removed "pursuant to instruction from Chambers." Doc. Rep., Entry for DE 2 (text of clerk's entry). Yet it is Plaintiffs who now seek sanctions.

Plaintiffs' request has no basis, and this Court should deny their motion. Likewise, this Court should reject Plaintiffs' argument that they were entitled to designate as Confidential the data that Jason Lindo purported to rely upon.

### BACKGROUND

On July 19, 2019, this Court entered a protective order "govern[ing] the handling of all confidential and sensitive documents." DE 69 at ¶ 1. It defines "Confidential" information as, *inter alia*, "information about the plaintiffs, their staff members, physicians, and patients, and other sensitive information," information deemed confidential under state and federal law, and certain "proprietary information." *Id.* at ¶ 3. It is generally up to a producing party to designate documents Confidential, and that information will "not become a part of the public record except upon the written consent of the party or person supplying the information or unless so ordered by

this Court." *Id*. at ¶ 16.  The receiving party, however, may "notify the producing party in writing within fourteen (14) days" that it disputes any designations. *Id.* at ¶ 5.  In that case, "[t]he parties will make good faith efforts to resolve" those disputes. *Id.*  But "[i]f the parties cannot agree, the producing party must seek relief from the Court." *Id.*

Following the entry of that order, Plaintiffs produced documents containing abortion data that had purportedly been provided to Jason Lindo.  Plaintiffs had previously refused to provide that material.  But during a telephonic hearing concerning a potential protective order, Plaintiffs represented that "if the protective order is entered today, plaintiffs will produce the documents today." July 19, 2019 Hearing Tr. at 11. After this Court entered a protective order, Plaintiffs waited until nearly midnight to produce anything, and what they produced was not what they had given to Lindo.  Rather, Plaintiffs created new documents that—they now say—contained different data. *See* DE 79, 79-1, 80-1.  When Defendants objected to being provided specially created files, Plaintiffs eventually sent two Excel spreadsheets. *See* DE 80-4.  Those spreadsheets, provided less than 48 hours before the hearing on Plaintiffs' motion for a temporary restraining order, too apparently contained a different set of data than they gave Lindo. *See* DE 79, 79-1.  In fact, Plaintiffs now claim they did not send the correct data to Defendants until they filed it with this Court twelve days after representing that they would produce it.  *See* July 19, 2019 Hearing Tr. at 11; DE 99 (filed 07/31/19).  And that data still did not match what they had reported to the Arkansas Department of Health. *See* DE 103 at 55; *compare* Sealed Exhibits filed at DE 81 on July 23, 2019 *with* Defendants' Sealed Exhibit 1 filed at DE 105 on July 31, 2019.

Reviewing the various materials that Plaintiffs provided, it became immediately clear that they did not qualify as Confidential information.  For instance, they did not contain information

that could jeopardize the privacy or safety of Plaintiffs, their staff, their patients, or anyone else. They likewise do not contain any confidential business information.  Nor do they contain any patient-identifying information or information that could be used to identify patients.  To the contrary, they were substantially similar to public exhibits filed in the consolidated case of *Planned Parenthood of Arkansas & Eastern Oklahoma v. Jegley*, Case No. 4:15-cv-00784 DE 101-1.

That and Plaintiffs' production of multiple different data sets led Defendants to conclude that Plaintiffs had something to hide.  Indeed, Plaintiffs' shifting claims with respect to Lindo's data was not the first time that they had produced inconsistent data in this consolidated case. Rather, in *Jegley*, Plaintiffs provided data showing that they had performed more abortions than had been reported to Arkansas.  *E.g.*, *Jegley*, Case No. 4:15-cv-00784 DE 114 (TRO Order recognizing a discrepancy).  As a result, Defendants determined that the various data sets did not qualify as Confidential information and that disclosure was in the public interest.

Before the close of business on Friday, July 26, 2019, Defendants therefore served Plaintiffs with a notice challenging the Plaintiffs' designations.  Ex. A (Defendants' notice). "Pursuant to paragraph 5 of the Court's Protective Order," that notice disputed Plaintiffs' designations, inquired why Plaintiffs had designated those materials as Confidential, and sought to initiate "a good-faith effort to resolve this matter." *Id.* at 2.  Defendants' notice also explained that the protective order makes it "Plaintiffs' obligation to explain why they believe these materials are confidential and seek relief from the Court if the parties cannot resolve this matter." *Id.*  Given Plaintiffs' history of dilatory delay, Defendants sought a response and agreement "no later than Noon Central Time on Monday, July 29, 2019." *Id.*  Absent a response, Defendants explained that they would publicly file those exhibits "*pursuant to the terms of the Court's*

3

*Protective Order.*" *Id.* (emphasis added). As noted above, that order expressly contemplates material "becom[ing] part of the public record" if "so ordered by this Court," DE 69 at ¶ 5, and Defendants intended to immediately seek such an order.[1] Defendants did not publicly file and have not publicly filed any materials that Plaintiffs designated Confidential.

Plaintiffs did not respond to Defendants' notice. Instead, more than two days later, Plaintiffs filed a motion seeking sanctions and a declaration that their designations were proper. DE 90. That motion incorrectly claimed that Defendants would "publicly file the information on the docket at noon CST." *Id.* at 2. They based that claim on an edited passage from Defendants' notice that they rewrote to say that, "***[a]bsent an adequate explanation from Plaintiffs and an agreement of the parties no later than Noon Central Time on Monday, July 29, 2019 . . . Defendants will consider Plaintiffs' confidentiality claims waived and file these exhibits on the public docket***." *Id.* at 6 (bold face, italics, and ellipsis in Plaintiffs' filing) (purporting to quote Defendants' notice). But as noted above, Defendants had actually communicated that they would do so "pursuant to the terms of the Court's Protective Order." Ex. A at 2. Moreover, to the extent there might have been any misunderstanding, Plaintiffs could have sought clarification. Indeed, the protective order contemplates as much, requiring "good faith efforts to resolve" disputes. DE 69 at ¶ 5.

After Plaintiffs filed their motion, Defendants immediately notified this Court via email that Plaintiffs' filing grossly mischaracterized Defendants' notice and that "Defendants have no intention of filing the exhibits to the public docket while this Court reviews Plaintiffs' blanket, erroneous designation of those exhibits as confidential." Ex. B (July 29, 2019 email). This

---

[1] Absent a deadline, Defendants would have been required to wait for the Plaintiffs to seek relief. *See* DE 69 at ¶ 5 ("If the parties cannot agree, the producing party *must* seek relief from the Court." (emphasis added)).

Court thereafter convened an immediate hearing on Plaintiffs' motion, and this Court cautioned both parties that information designated Confidential remains so absent an order.

Just three days later, Plaintiffs filed a public document citing information that Defendants had designated Confidential and publicly identified an entity or entities—other than Plaintiffs' abortion facilities—as having performed abortions.  *See* DE 109.  In stark contrast to Defendants' notice disputing designations, Plaintiffs *never* attempted to challenge Defendants' designations.  Instead, Plaintiffs simply publicly filed that information.  After Defendants discovered that disclosure and immediately notified Plaintiffs, Plaintiffs waited a *full hour* to respond to Defendants' request for assistance.  As a result, information that Defendants had designated Confidential was publicly available for *at least* two-and-a-half hours.  *See id.* at 4-5.  Plaintiffs' filing created a significant risk that information was accessed by the public, the media, and others and that it would be further disseminated.

In response to Plaintiffs' actions, Defendants asked this Court to ensure Plaintiffs' filing was removed from public view and to consider whether other appropriate relief was necessary.  Plaintiffs have opposed that motion and argue that—despite willfully violating the protective order—sanctions are not warranted.

**ARGUMENT**

Plaintiffs intentionally filed information on the public docket that Defendants designated Confidential.  That information remained publicly available for at least two-and-a-half hours.  Plaintiffs argue that sanctions are not warranted for that conduct.  By contrast, Plaintiffs seek sanctions for Defendants' momentary, inadvertent display of information during the temporary-restraining-order hearing and Defendants' notice disputing Plaintiffs' designations.  That incongruous request stands equity on its head.  Nor for that matter does Plaintiffs' claim that

challenged materials were properly designated have any merit. This Court should deny Plaintiffs' motion.

## I. Plaintiffs' designations are improper.

Plaintiffs have now designated three different sets of data that Lindo purportedly relied upon to form his opinions as Confidential. None of those materials were properly designated, and they are not entitled to protection. As such, this Court should issue an order invalidating their designations as Confidential.

Plaintiffs' primary argument for designation is that the shifting sets of data that they produced are shielded from disclosure by the Health Insurance Portability and Accountability Act (HIPAA). But HIPAA's definition of "protected health information" only covers "individually identifiable health information." 45 C.F.R. 160.103. In other words, HIPAA only applies to information that either "identifies the individual" or could "be used to identify the individual." *Id.*; *see, e.g.*, *S.C. Med. Ass'n v. Thompson*, 327 F.3d 346, 353 n.2 (4th Cir. 2003) (quoting 42 U.S.C. 1320d(6)(B)). The documents designated Confidential do not, as a whole, fit that definition. To the extent any of them contain protected health information, they could easily have been redacted to ensure that information covered by HIPAA was not disclosed. Plaintiffs, however, made no attempt to do that. Instead, they just designated entire documents as Confidential.

Nor for that matter does the data otherwise qualify as Confidential information. It does not contain any confidential business information. It also does not contain any information that could jeopardize the privacy or safety of Plaintiffs, their staff, their patients, or anyone else. And Plaintiffs' suggestion that anonymous information could be used to identify patients strains credulity. Indeed, Plaintiffs do not attempt to explain that claim, and it conflicts with their own

6

history of not objecting to similar information being filed here and in *Jegley*. *See* DE 82-1; *see also Jegley*, Case No. 4:15-cv-00784 DE 101-1.

Further, while Plaintiffs' failure to explain how their basis for designating that information alone requires this Court to override those designations, Plaintiffs' history of manipulating data underscores the public interest in disclosure. Plaintiffs admit that—in this case alone—they have produced three *different* sets of data that contain different information. *See* DE 79, 79-1, 99. And both here and in *Jegley*, they claim to have performed a different number of abortions than they reported to the Arkansas Department of Health. There is undoubtedly a public interest in exploring that pattern of misrepresentation, and Arkansas, patients, and the public are entitled to examine Plaintiffs' reporting practices. Therefore, this Court should invalidate Plaintiffs' designations.

## II. The Court should deny Plaintiffs' motion for sanctions.

Plaintiffs are not entitled to sanctions, and this Court should deny their motion. Ultimately, Plaintiffs argue that they are entitled to an admonition and the cost of filing their motion for sanctions. Those claims rest on Defendants' brief, inadvertent display of information during the temporary-restraining-order hearing and Defendants' notice disputing their designations.

Correctly recognizing that the former was momentary and inadvertent, Plaintiffs do not allege any harm from it. Plaintiffs did not seek any relief at the hearing or until a week after the hearing. *See Dauenhauer v. Green Inv. Grp., Inc.*, Case No. CV 12-33-M-DLC, 2013 WL 4482999, at *3 (D. Mont. Aug. 20, 2013) (sanctions not warranted when no harm resulted from a one-day-late disclosure, and it is "hard to imagine that challenging . . . [an] accidental omission[] is the best use of an attorney's time"). Moreover, Plaintiffs' public filing of personal information that had to be removed "pursuant to instruction from Chambers" underscores that parties

sometimes make mistakes.  *See* Doc. Rep., Entry for DE 2 (text of clerk's entry).  That's even truer under strict time-constraints of a fast-moving, temporary-restraining-order hearing.  Indeed, as one court commonsensically put it, the "litigation process is better served if attorneys deal with each other on a basis of cooperation and not technical niceties of trying to stick it to the other" for mistakes.  *Int'l Oil, Chem. & Atomic Workers, Local 7-517 v. Uno-Ven Co.*, Case No. 97 C 2663, 1998 WL 100264, at *4 (N.D. Ill. Feb. 23, 1998).

Plaintiffs' charge that Defendants' notice "threaten[ed]" to disclose material fares no better.  DE 90 at 5.  To the contrary, "[p]ursuant to paragraph 5 of the Court's Protective Order," that notice disputed Plaintiffs' designations, inquired why Plaintiffs had designated information as Confidential, sought to initiate "a good-faith effort to resolve this matter," gave Plaintiffs a response deadline, and explained that Defendants would seek to file those materials "pursuant to the terms of the Court's Protective Order."  Ex. A.  Plaintiffs appear to have misinterpreted that notice, and they certainly could have sought clarification from Defendants.  They did not do that, and they are not entitled to costs for failing to do so.  Nor—under the express terms of the protective order—are Plaintiffs entitled to costs for seeking to enforce their designations since that order places the burden on the producing party to seek relief in the event of a designation dispute.  *See* DE 69 at ¶ 5 ("If the parties cannot agree, the producing party must seek relief from the Court.").

Plaintiffs' request also conflicts with their own intentional public filing of Confidential information and request not to face sanctions.  As previously explained, Plaintiffs publicly filed information that Defendants had designated Confidential at an hour that ensured it could not be promptly removed from the public docket.  That information remained accessible for at least two-and-a-half hours.  Plaintiffs argue their intentional public filing of Confidential information

8

should be excused, but Defendants should face sanctions. That argument turns equity on its head. Plaintiffs' motion should be denied.

## CONCLUSION

For the reasons set forth above, this Court should deny Plaintiffs' motion.

Dated: August 12, 2019

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

Nicholas J. Bronni (2016097)
  Solicitor General
Vincent M. Wagner (2019071)
  Deputy Solicitor General
Michael A. Cantrell (2012287)
Dylan L. Jacobs (2016167)
  Assistant Solicitors General
Jennifer L. Merritt (2002148)
  Senior Assistant Attorney General
OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas  72201
(501) 682-2007
(501) 682-8162 (fax)
Michael.Cantrell@ArkansasAG.gov

*Counsel for Defendants*