THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LITTLE ROCK FAMILY PLANNING SERVICES, *et al.*                    **PLAINTIFFS**

**v.**                                    **Case No. 4:19-cv-00449-KGB**

LESLIE RUTLEDGE, in her official capacity as Attorney
General of the State of Arkansas, *et al.*                    **DEFENDANTS**

<u>**TEMPORARY RESTRAINING ORDER**</u>

Before the Court are a motion for expedited leave to file a supplemental complaint and a motion for an *ex parte* temporary restraining order and/or preliminary injunction filed by separate plaintiffs Little Rock Family Planning Services ("LRFP") and Thomas Tvedten, M.D., on behalf of himself and his patients (collectively, the "Supplemental Complaint Plaintiffs") (Dkt. Nos. 132, 134). In the instant motions, the Supplemental Complaint Plaintiffs challenge as unconstitutional the State of Arkansas' enforcement of Arkansas Governor Asa Hutchinson's April 4, 2020, Executive Order 20-13, which amended both Executive Order 20-03, issued March 11, 2020, and Executive Order 20-10, issued March 26, 2020, and application of the April 3, 2020, Arkansas Department of Health's ("ADH") Directive on Elective Surgeries (the "ADH Directive") through an April 10, 2020, cease-and-desist order sent by ADH to LRFP to bar all surgical abortions, "except where immediately necessary to protect the life or health of the patient" (the "ADH Cease-and-Desist Order") (collectively, the "Challenged Provisions"). For the reasons set forth herein, the Court provisionally grants the Supplemental Complaint Plaintiffs' motion for expedited leave to file a supplemental complaint and motion for an *ex parte* temporary restraining order. The Court has under advisement the Supplemental Complaint Plaintiffs' motion for a preliminary injunction. The Court will reconsider these matters upon the submission of defendants' written arguments.

I.      **Factual And Procedural History**

Plaintiffs commenced this action on June 26, 2019.  Along with the complaint for injunctive and declaratory relief, a motion for a temporary restraining order and/or preliminary injunction was filed by separate plaintiffs LRFP and Dr. Tvedten (Dkt. Nos. 1, 2).[1]  Plaintiffs filed this action seeking declaratory and injunctive relief on behalf of themselves and their patients under the United States Constitution and 42 U.S.C. § 1983 to challenge three acts passed by the Arkansas General Assembly:  (1) Arkansas Act 493 of 2019, which bans abortion "where the pregnancy is determined to be greater than 18 weeks," as measured from the first day of a woman's last menstrual period ("LMP") in nearly all cases; (2) Arkansas Act 619 of 2019, which prohibits a physician from intentionally performing or attempting to perform an abortion "with the knowledge" that a pregnant woman is seeking an abortion "solely on the basis" of:  a test "indicating" Down syndrome, a prenatal diagnosis of Down syndrome, or "[a]ny other reason to believe" the "unborn child" has Down syndrome ("Act 619"); and (3) Arkansas Act 700 of 2019, which provides that "[a] person shall not perform or induce an abortion unless that person is a physician licensed to practice medicine in the state of Arkansas and is board-certified or board-eligible in obstetrics and gynecology."  The Court entered a temporary restraining order on July 23, 2019 (Dkt. No. 83).  The Court subsequently entered a preliminary injunction order on August 6, 2019 (Dkt. No. 119).  Defendants appealed (Dkt. No. 120), and their appeal remains pending before the Eighth Circuit Court of Appeals.

On April 13, 2020, the Supplemental Complaint Plaintiffs filed a motion for expedited leave to file a supplemental complaint and a motion for an *ex parte* temporary restraining order and/or preliminary injunction (Dkt. Nos. 132, 134).  Defendants have not yet responded to either

---

[1] Not all named plaintiffs in this lawsuit joined in the initial motion for temporary restraining order and/or preliminary injunction (Dkt. Nos. 2, 32).

motion.  However, plaintiffs notified counsel for defendants on April 12, 2020, of their intent to seek an *ex parte* temporary restraining order barring enforcement of the Challenged Provisions against LRFP to bar all surgical abortions, "except where immediately necessary to protect the life or health of the patient" (Dkt. No. 134-18, ¶ 4).

To briefly summarize the factual background, on April 3, 2020, the ADH issued the ADH Directive that states that elective surgery "[p]rocedures. . . that can be safely postponed shall be rescheduled to an appropriate future date," subject to certain enumerated exceptions (Dkt. No. 134-7, at 2).  The next day, by Executive Order 20-13, Governor Hutchinson declared that a violation of a directive from the Secretary of Health "is a misdemeanor offense, and upon conviction therefore is punishable by a fine of not less than one hundred ($100) nor more than five hundred dollars ($500) or by imprisonment not exceeding one (1) month, or both."  (Dkt. No. 132-1, at 29–32).  On April 10, 2020, the ADH sent LRFP the ADH Cease-and-Desist Order stating that the April 3, 2020, ADH Directive "mandates the postponement of all procedures that are not immediately medically necessary," and thus, according to ADH, the "prohibition applies to surgical abortions that are not immediately necessary to protect the life or health of the patient." (Dkt. No. 134-2, at 31).  The ADH Cease-and-Desist Order requires LRFP to "immediately cease and desist the performance of surgical abortions, except where immediately necessary to protect the life or health of the patient."  (*Id.*).  The ADH Cease-and-Desist Order also states that "[a]ny further violations of the April 3 [ADH] Directive will result in immediate suspension of [LRFP's] license."  (*Id.*).  Based on record evidence, the Challenged Provisions do not contain an expiration date, and neither the ADH nor Governor Hutchinson have determined how long the Challenged Provisions will remain in effect (Dkt. No. 132-1, ¶ 35).

Based on record evidence, only the following types of abortion care are available in Arkansas currently:  medication abortions, which are available only up to 10 weeks as measured from the first day of a woman's last menstrual period ("LMP"), aspiration surgical procedures, which are performed until approximately 13 weeks LMP, and dilation and evacuation ("D&E") surgical procedures, which are performed until 21.6 weeks LMP, the legal time limit for an abortion in Arkansas.  After 10 weeks LMP, the only type of abortion care available in Arkansas is surgical abortion.

## II.     Motion For Expedited Leave To File A Supplemental Complaint

Rule 15(d) of the Federal Rules of Civil Procedure authorizes supplementation of a complaint based on later events.  While an amended pleading under Rule 15(a) "is designed to include matters occurring before the filing of the bill but either overlooked or not known at the time," a supplemental pleading under Rule 15(d) "is designed to cover matters subsequently occurring but pertaining to the original cause."  *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977).  "The purpose of Rule 15(d) is to promote, as complete an adjudication as possible, of an existing dispute between the parties, which may have evolved since the action was initiated." *Schneeweis v. Nw. Tech. Coll.*, No. CIV.97-1742 (JRT/RLE), 1998 WL 420564, at *13 (D. Minn. June 1, 1998).

A copy of the Supplemental Complaint Plaintiffs' proposed first supplemental complaint for injunctive and declaratory relief is attached as Exhibit 1 to the Supplemental Complaint Plaintiffs' motion for expedited leave to file a supplemental complaint.  The Supplemental Complaint Plaintiffs maintain that 2 of the 4 plaintiffs in their proposed supplemental complaint are the same, as are all 18 named defendants.  They allege that the Challenged Provisions, among other things, violate Arkansas women's right to access abortion care under the Substantive Due

Process and Equal Protection Clauses of the Fourteenth Amendment.  Further, the Supplemental Complaint Plaintiffs plead facts relating to:  (i) abortion procedures typically provided in Arkansas and their safety compared to other medical procedures; (ii) the importance of abortion as an element of women's health care; (iii) the significant obstacles that women face in accessing abortion care in Arkansas, including travel distance and a lack of financial resources; and (iv) risks to women's health and well-being that arise when access to abortion care is delayed, or denied altogether (Dkt. No. 133, at 5).

These issues are factually and legally similar to those raised in the operative complaint (Dkt. No. 1, ¶¶ 37–108) and have previously been addressed by the Court (Dkt. Nos. 83, 119). The Supplemental Complaint Plaintiffs represent that that the Court's analysis of the supplemental complaint's claims will involve facts, issues, and witnesses common to the underlying litigation, as well.  Further, because plaintiffs' appeal remains pending in the Eighth Circuit, neither the discovery period nor other pre-trial district-court proceedings have commenced in this case.

Having carefully reviewed the motion and associated briefing, as well as the entire record in this case, the Court provisionally grants the Supplemental Complaint Plaintiffs' motion for expedited leave to file a supplemental complaint (Dkt. No. 132) and directs the Supplemental Complaint Plaintiffs to file their proposed first supplemental complaint for injunctive and declaratory relief, attached as Exhibit 1 to their motion for expedited leave to file a supplemental complaint, within seven days from the entry of this Order.

### III.    Motion For An *Ex Parte* Temporary Restraining Order

On the limited record before it, the Court finds that the Supplemental Complaint Plaintiffs have demonstrated a likelihood of success on their substantive due process argument, irreparable harm should the temporary restraining order not be granted, and that the balance of the equities

and the public interest will be served by a temporary restraining order.   Accordingly, the Supplemental Complaint Plaintiffs are entitled to an *ex parte* temporary restraining order barring enforcement of the Challenged Provisions against LRFP.

### A.      Standing To Seek Injunctive Relief

Having independently considered the issue, the Court finds that the Supplemental Complaint Plaintiffs have standing under Article III and 42 U.S.C. § 1983 to pursue a temporary restraining order to prohibit defendants from enforcing the Challenged Provisions against LRFP (Dkt. No. 119, at 76–82).   Further, the Court construes this as a facial challenge to the Challenged Provisions (Dkt. No. 119, at 83–84).

### B.      Legal Standard

In the Eighth Circuit, the same standards are applied to a request for a preliminary injunction as to a request for a temporary restraining order.   *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989).   In determining whether to issue a temporary restraining order, a district court should consider:   "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."   *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).   Under *Dataphase*, no one factor is determinative.   *See Dataphase*, 640 F.2d at 113.   A temporary restraining order "is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant," here, the Supplemental Complaint Plaintiffs.   *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted).   Additional considerations impact the Court's determination to grant *ex parte* relief.   *See* Fed. R. Civ. P. 65(b).

### C.       Discussion

The limited record before the Court demonstrates that the Supplemental Complaint Plaintiffs are entitled to a temporary retraining order barring enforcement of the Challenged Provisions.

### 1.       Scope Of The Challenged Provisions

Although Arkansas has undertaken statewide efforts to counter the impact of the coronavirus diseases 2019 ("COVID-19"), those efforts have been targeted.  Although Governor Hutchinson declared in Executive Order 20-13, issued April 4, 2020, "the entire state an emergency disaster area" and prohibited "gatherings of more than ten (10) people in any confined indoor or outdoor space . . . until further notice," Governor Hutchinson has declined to issue a stay-home order to all Arkansas residents.  (Dkt. No. 132-1, ¶ 29 (alteration in original)).  Governor Hutchinson permits "gatherings of ten (10) or more people in . . . parks, trials, athletic fields and courts, parking lots, golf courses, and driving ranges where social distancing of at least six (6) feet can be easily maintained."  (*Id.* (alteration in original)).  Further, Governor Hutchinson exempted "businesses, manufacturers, construction companies, places of worship, the Arkansas General Assembly, municipal or county governing bodies, [and] the judiciary" from Executive Order 20-13.  (*Id.*).

The Court is mindful that, in the April 3, 2020, ADH Directive, due to "increasing concerns of staff and medical supplies capabilities in hospitals statewide," the ADH directed that "mandatory actions" be taken by all health facilities, including ambulatory surgery centers and abortion facilities, to "preserve staff, personal protective equipment (PPE), and patient care supplies; ensure staff and patient safety; and expand available hospital capacity during the COVID-19 pandemic."  (*Id.*, at 27).  Specific to this dispute, the ADH required that "[p]rocedures, testing,

and office visits that can be safely postponed shall be rescheduled to an appropriate future date," but recognized that "[e]mergent, urgent and care designated as an exception. . . will continue." (*Id.*).  As specific exceptions to the ADH Directive, the ADH cited:

- If there is a threat to the patient's life if the procedure is not performed.

- If there is a threat of permanent dysfunction of an extremity or organ system if the surgery is not done.

- If there is a risk of metastasis or progression of staging of a disease or condition if surgery is not performed.

- If there is a risk that the patient's condition will rapidly deteriorate if surgery is not done, and there is a threat to life or an extremity or organ system or a threat of permanent dysfunction or disability.

(*Id.*).

When asked about the April 3, 2020, ADH Directive, the ADH explained that it is "not intended to replace a physician's judgment" and reiterated that the ADH Directive encompasses only procedures that can be "safely deferred."  (Dkt. No. 134-2, ¶ 31).  As of April 8, 2020, Arkansas Governor Hutchinson represented in public comments that, based on the statewide efforts, Arkansas has "a lot of hospitals that are empty right now and health care workers that are empty," presumably meaning that are available to provide care (Dkt. No. 132-1, ¶ 32).  When asked on April 9, 2020, if "elective surgeries" were still permitted in Arkansas, ADH responded that judgments at surgical centers would be left primarily to the providers (Dkt. No. 134-2, ¶ 36).

In the April 10, 2020, ADH Cease-and-Desist Order, the ADH stated to LRFP:

Your facility was found to be performing surgical abortions that are not immediately necessary to protect the life or health of the patient, and your facility is therefore in violation of the April 3 Directive.  Your facility is required to postpone such procedures until after the COVID-19 emergency has ended and the April 3 Directive is withdrawn.

Accordingly, your facility is ordered to immediately cease and desist the performance of surgical abortions, except where immediately necessary to protect

the life or health of the patient.  Any further violations of the April 3 Directive will
result in an immediate suspension of your facility's license.

(Dkt. No. 132-1, at 36).

From the face of the April 3, 2020, ADH Directive and the April 10, 2020, ADH Cease-
and-Desist Order, defendants appear to have created a conflict or narrowing of the exceptions
available to LRFP and its clinicians when determining how to proceed with surgical abortion
patient care in Arkansas.  The Court is aware of no clarification provided by defendants with
respect to this apparent conflict.[2]

The record demonstrates the reality of abortion care in Arkansas (Dkt. No. 134-2, ¶¶ 16–
17, 19–22).  Mandatory in-person counseling is required prior to procedures, with prescribed wait
times and return visits to the clinic.  The Court understands that these in-person counseling sessions
have not been permitted to be conducted by telemedicine by defendants and instead are still
proceeding as required by current law.  Further, there are limits on clinic capacity resulting from
the COVID-19 pandemic and required social distancing (*Id.*, ¶ 26).  There also are limits on
LRFP's capacity to see surgical abortion patients each day (*Id.*, ¶ 48).  Moreover, every day
patients are at risk of contracting the COVID-19 virus, jeopardizing their ability to visit a clinic
and receive time-sensitive care (*Id.*, ¶ 49).

The Supplemental Complaint Plaintiffs maintain that they seek relief "on behalf of patients
who are particularly burdened" due to the time-sensitive nature of abortion care, including patients

---

[2]  As a claim in their supplemental complaint, the Supplemental Complaint Plaintiffs also
assert that the Challenged Provisions are unconstitutionally vague because, according to
Supplemental Complaint Plaintiffs, it is "impossible to determine what specific medical
procedures the Arkansas Health Department's April 3, 2020 Directive on Elective Surgeries
prohibits clinicians from providing their patients." (Dkt. No. 132-1, ¶ 53).

for whom the Challenged Provisions will, in the good faith, professional judgment of the treating physician:

> (i) likely worsen any maternal-health conditions that predate the pregnancy or result from the pregnancy;

> (ii) likely stand in the way of the patient ultimately accessing abortion care, because of patient-specific factors like medical history, the circumstances that led to the patient's decision to seek care in the first place (*i.e.*, domestic violence), and the logistical and financial obstacles faced by the patient;

> (iii) bar access to abortion because medication abortion is contraindicated;

> (iv) likely push to a more complex and more time-intensive surgical-abortion procedure (beginning around 14 weeks LMP);

> (v) require the patient to visit the clinic an additional time for a two-day procedure, instead of a one-day procedure, which beings at approximately 18 weeks LMP; or

> (vi) likely push beyond the point at which abortion is available in the State (*i.e.*, 21.6 weeks LMP).

(Dkt. No. 135, at 41).

## 2.     Likelihood Of Success On The Merits

"In considering the likelihood of the movant prevailing on the merits, a court does not decide whether the movant will ultimately win." *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007) (citing *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991)).  Rather, the Eighth Circuit has instructed district courts to "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)).  Still, "an injunction cannot issue if there is no chance of success on the merits." *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005); *see also Wachovia Sec., L.L.C. v. Stanton*,

571 F. Supp. 2d 1014, 1033 (N.D. Iowa 2008) ("Likelihood of success on the merits requires that the movant find support for its position in governing law.").[3]

This Court has previously examined the law generally directed at pre-viability abortions and the types of abortions offered in Arkansas (Dkt. No. 119, at 84–89). The Court concludes that, at this stage of the proceedings, and on the record evidence currently before the Court, the Supplemental Complaint Plaintiffs are likely to prevail on their argument that the Challenged Provisions unconstitutionally restrict pre-viability abortions and, therefore, are facially unconstitutional. The Challenged Provisions prohibit virtually all pre-viability abortions after 10 weeks LMP and prohibit virtually all pre-viability abortions for patients for whom medication abortion is contraindicated. That the ADH Cease-and-Desist Order allows for a very narrow exception for surgical abortions "immediately necessary to protect the life or health of the patient" does not change the Court's analysis.

It is the view of the Court that the undue-burden test announced by the Supreme Court in *Planned Parenthood of Southern Pennsylvania v. Casey*, 505 U.S. 833 (1992), does not apply to its analysis of the Challenged Provisions. The Supplemental Complaint Plaintiffs are likely to prevail on their argument that the Challenged Provisions prohibit nearly all pre-viability abortions

---

[3]   The Court notes that the Eighth Circuit has revised the *Dataphase* test for preliminary injunctive relief when applied to challenges to laws passed through the democratic process, which are entitled to a "higher degree of deference." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 725, 732 (8th Cir. 2008). In such cases, it is never sufficient for the moving party to establish that there is a "fair chance" of success. *Id.* at 730. Instead, the appropriate standard, and threshold showing that must be made by the movant, is "likely to prevail on the merits." *Id.* Only if the movant has demonstrated that it is likely to prevail on the merits should the Court consider the remaining factors. *See id.* Given the nature of the Challenged Provisions, it is not clear that this heightened standard applies. These actions were taken as authorized by Arkansas Code Annotated § 20-7-110 and, under Arkansas law, appear to have the force and effect of law. *See Mannis v. State*, 398 S.W.2d 206 (Ark. 1966); *Wright v. DeWitt School Dist. #1*, 385 S.W.2d 644 (Ark. 1965). However, even if the *Rounds* standard applies here, the Court determines that the Supplemental Complaint Plaintiffs meet it at this stage of the litigation.

past 10 weeks LMP, which the Supreme Court has repeatedly held is a prohibition that cannot be imposed by the state. *See Casey*, 505 U.S. at 846 (plurality op.) (affirming *Roe*'s "essential holding" that "[b]efore viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure"); *see also Little Rock Family Planning Servs. v. Rutledge*, 397 F. Supp. 3d 1213, 1266 (E.D. Ark. 2019) ("[P]rohibitions on abortions pre-viability, even when they contain limited exceptions, are per se unconstitutional under binding Supreme Court precedent" (citing *Edwards v. Beck*, 786 F.3d 1113, 1117 (8th Cir. 2015), and *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 772–23 (8th Cir. 2015))), *appeal docketed*, No. 19-2690 (8th Cir. Aug. 9, 2019).  And this Court is not alone is refusing to apply the undue-burden standard when presented with state laws that unconditionally eliminate the right to abort a nonviable fetus for a defined class of women.  *See Isaacson v. Horne*, 716 F.3d 1213, 1225 (9th Cir. 2013) (reasoning that *Casey*'s undue-burden analysis "has no place where, as here, the state is *forbidding* certain women from choosing pre-viability abortions rather than specifying the conditions under which such abortions are to be allowed.").

The limited exceptions to the Challenged Provisions do not change the constitutional analysis or this Court's determination at this stage of the proceedings.  *See Edwards*, 786 F.3d at 1117 ("Whether or not 'exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.'" (quoting *Casey*, 505 U.S. at 879)); *MKB Mgmt.*, 795 F.3d at 772–23 (8th Cir. 2015) (determining that a North Dakota law prohibiting all abortions to the point in pregnancy when the fetus possessed a detectable heartbeat, which are detectable at about six weeks, with exception for medical necessity, impermissibly infringed on a woman's due process right to choose to terminate

pregnancy before viability); *Isaacson*, 716 F.3d at 1228 ("[W]hile a health exception is necessary to save an otherwise constitutional post-viability abortion ban from challenge, it cannot save an unconstitutional prohibition on the exercise of a woman's right to choose to terminate her pregnancy before viability."); *see also Robinson v. Marshall*, No. 2:19cv365-MHT (WO), at 22 n.6, 32–33 (M.D. Ala. Apr. 12, 2020) (reasoning, in the context of a constitutional challenge to a pre-viability ban on abortion premised upon COVID-19 concerns, that "[i]t is abundantly clear that the medical restrictions in the state health order are unconstitutional to the extent that they *prevent* a woman from obtaining an abortion before viability—that is, where they effect a *prohibition* on abortion), *appeal filed*, (11th Cir. Apr. 13, 2020).

Even if the undue-burden standard applies to the Court's analysis of the Supplemental Complaint Plaintiffs' substantive due process claim, the Court determines that the Supplemental Complaint Plaintiffs are likely to prevail because the burdens of the Challenged Provisions far outweigh their purported benefits. This Court is bound to apply Supreme Court and Eighth Circuit precedents. Generally, to determine whether a state statute restricting abortion access is unconstitutional and violates substantive due process rights, the Court applies the "undue-burden" standard developed in *Casey*, 505 U.S. at 876–79 (plurality op.), and *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2296, 2309–11 (2016). The Supplemental Complaint Plaintiffs may prevail on a facial challenge to the Challenged Provisions if they "can show that 'in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion.'" *Hopkins v. Jegley*, 267 F. Supp. 3d 1024, 1050 (E.D. Ark. 2017) (alteration in original) (quoting *Casey*, 505 U.S. at 895), *amended*, No. 4:17-CV-00404-KGB, 2017 WL 6946638 (E.D. Ark. Aug. 2, 2017), *appeal docketed*, No. 17-2879 (8th Cir. Aug. 28, 2017). The Court determines, at least at this preliminary stage of the litigation, that the

Supplemental Complaint Plaintiffs are likely to prevail on their argument that, when the Court weighs the benefits and burdens of the Challenged Provisions, they place an undue burden on a woman's access to abortion in violation of the Fourteenth Amendment to the United States Constitution.

The Court first examines Arkansas' asserted interest in the Challenged Provisions.  The Supplemental Complaint Plaintiffs are likely to prevail on their argument that the Challenged Provisions do not meaningfully further the State's admittedly legitimate interests in protecting or promoting the public's health and safety during the COVID-19 pandemic.  There is record evidence that LRFP is wholly self-sustaining in terms of personal protective equipment ("PPE") and has no plans to utilize State PPE resources.  Further, there is record evidence that, if women are forced to continue their pregnancies, the PPE required for the associated pre-natal care and delivery would surpass that used at LRFP in providing abortion care.  Likewise, record evidence demonstrates that pre-viability abortion care decreases rather than exacerbates demand for hospital capacity, especially given this Court's findings that abortion is safer and does not burden hospitals as much as continued pregnancy, miscarriage management, and childbirth.

On the record before the Court, the Challenged Provisions are not necessitated by social-distancing concerns, given LRFP's Precautions and Protocols in Response to COVID-19 Pandemic, formalized and instituted on April 2, 2020 (Dkt. No. 134-2, at 23–25).  Numerous medical experts have determined that abortion care remains critical, time-sensitive health care that should not be delayed even during this pandemic (Dkt. No. 135, at 16–18).  In determining whether regulations actually further women's health, the Supreme Court has repeatedly looked at the generally accepted standards for medicine set by the nation's major health organizations.  *See*, *e.g.*,

*Simopoulos v. Virginia*, 462 U.S. 506, 517 (1983) (considering standards for obstetric-gynecological services standards set by the American College of Obstetricians and Gynecologists).

This Court next examines the claimed burden of the Challenged Provisions, having previously explained the scope of this inquiry (Dkt. No. 119, at 164–68). Based on the record evidence before the Court at this stage of the proceedings, the Court finds that based on the number and types of abortions provided in Arkansas, the types of abortions to which the Challenged Provisions are relevant, and the likely impact of the Challenged Provisions on the availability of surgical abortion in Arkansas, the Supplemental Complaint Plaintiffs are likely to prevail on their argument that "'in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Jegley*, 267 F. Supp. 3d at 1050 (alteration in original) (quoting *Casey*, 505 U.S. at 895). The Challenged Provisions indefinitely postpone in Arkansas virtually all pre-viability abortions after 10 weeks LMP and indefinitely postpone virtually all pre-viability abortions for patients for whom medication abortion is contraindicated. The only exception cited in the ADH Cease-and-Deist Order is for abortions "immediately necessary to protect the life or health of the patient." The record evidence includes the number of abortions performed at LRFP, including medication and surgical, in 2019 and in 2020 to date (Dkt. No. 132-1, ¶ 10). The Challenged Provisions do not contain an expiration date, and neither the ADH nor Governor Hutchinson have indicated how long the Challenged Provisions will remain in effect.

In past decisions, this Court has declined to consider the availability of out-of-state abortion providers when examining the undue burden imposed by an abortion regulation (Dkt. No. 119, at 162–64). However, even if the Court considers such providers, that does not sway this Court's undue-burden analysis, given the states where alternate abortion care may be provided, the

logistical and financial arrangements necessary for patients to seek such care, the risk of contracting COVID-19 when traveling to an out-of-state abortion clinic and then spreading it to other Arkansawyers, the uncertainty of whether out-of-state abortion clinics will have the capacity to treat Arkansas women seeking a surgical abortion, and the uncertainty of whether other states will restrict abortion access during this time.

Further, the record supports a finding that enforcement of the Challenged Provisions against LRFP will inflict serious physical, emotional, and psychological injuries on LRFP's patients by forcing them to delay, or altogether forgo, access to abortion care (Dkt. No. 135, at 28– 29).

When the Court examines the burdens that the Challenged Provisions impose on access to abortion, which is a fundamental right, together with the benefits that the Challenged Provisions are likely to confer, the Court determines that the Supplemental Complaint Plaintiffs are likely to prevail on the merits of their substantive due process claim.

This finding is consistent with the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in which the Court upheld the authority of Massachusetts to enforce a compulsory vaccination law during a smallpox outbreak in Cambridge, Massachusetts.  While the *Jacobson* Court acknowledged that "the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety," it also cautioned that:

> if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.

*Id.* at 25, 31.  The *Jacobson* Court further explained that:

the police power of a state, whether exercised directly by the legislature, or by a local body acting under its authority, may be exerted in such circumstances, or by regulations so arbitrary and oppressive in particular cases, as to justify the interference of the courts to prevent wrong and oppression.

*Id.* at 38.  For the reasons discussed above, the Court is justified in barring enforcement of the Challenged Provisions against LRFP on this temporary basis given the record evidence before it.

The Court notes that four other federal district courts have found that such a pre-viability ban on abortion premised upon COVID-19 concerns is unconstitutional.  *See S. Wind Women's Ctr. LLC v. Stitt*, No. CIV-20-277-G, 2020 WL 1677094 (W.D. Okla. Apr. 6, 2020), a*ppeal docketed*, No. 20-6045 (10th Cir. Apr. 7, 2020); *Robinson*, 2020 WL 1520243 (M.D. Ala. Mar. 30, 2020), *stay granted, order amended*, 2020 WL 1659700 (M.D. Ala. Apr. 3, 2020); *Pre-term Cleveland v. Attorney Gen. of Ohio*, No. 1:19-cv-00360 (S.D. Ohio Mar. 30, 2020), *stay denied and appealed dismissed*, No. 20-3365 (6th Cir. Apr. 6, 2020); *Planned Parenthood Ctr. for Choice v. Abbott*, No. A-20-CV-323-LY, 2020 WL 1502102, (W.D. Tex. Mar. 30, 2020), *temporary stay entered sub nom.*, *In re Abbott*, No. 20-50264, 2020 WL 1685929 (5th Cir. Apr. 7, 2020), *vacated*, No. A-20-CV-323-LY, 2020 WL 1808897 (W.D. Tex. Apr. 8, 2020),  The Court acknowledges that a divided panel of the Fifth Circuit dissolved the partial stay issued by the Western District of Texas, reasoning that the abortion provider had not shown a substantial likelihood of success on its claim that Texas Governor Greg Abbott's Executive Order postponing non-essential surgeries and procedures until 11:59 p.m. on April 21, 2020, is unlawful.  *See In re Abbott*, 2020 WL 1685929.  That the Challenged Provisions are of an indefinite duration readily distinguishes this case from *In re Abbott*.

Having determined that the Supplemental Complaint Plaintiffs are likely to prevail on the merits of their substantive due process claim, the Court does not consider at this stage the

Supplemental Complaint Plaintiffs' likelihood of success on their equal protection or void-for-vagueness claims.

### 3.      Irreparable Harm

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quoting *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996)). It is well-established that the loss of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)); *see also M.B. v. Corsi*, No. 2:17-CV-04102-NKL, 2018 WL 5504178, at *5 (W.D. Mo. Oct. 29, 2018) ("A threat to a constitutional right is generally presumed to constitute irreparable harm.").

Here, "[LRFP's] showing that the [Challenged Provisions] interfered with the exercise of its constitutional rights and the rights of its patients supports a finding of irreparable injury." *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977). The limited record supports the Supplemental Complaint Plaintiffs' allegation that enforcement of the Challenged Provisions against LRFP will inflict serious physical, emotional, and psychological injuries on LRFP's patients by forcing them to delay, or altogether forgo, access to abortion care. "[T]he abortion decision is one that simply cannot be postponed, or it will be made by default with far-reaching consequences." *Bellotti v. Baird*, 443 U.S. 622, 643 (1979). A disruption or denial of LRFP's patients' abortion care cannot be undone after a trial on the merits. Therefore, the Court

finds, on the limited record before it, that the Supplemental Plaintiffs will suffer irreparable harm without preliminary injunctive relief.

### 4.      Balance Of The Equities And The Public Interest

The determination of where the public interest lies is dependent on the determination of the likelihood of success on the merits of the Fourteenth Amendment challenge "because it is always in the public interest to protect constitutional rights."  *Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007), *modified on reh'g*, 545 F.3d 685 (8th Cir. 2008); *see also Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 649 (6th Cir. 2015) ("[W]hen a constitutional violation is likely . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights." (second alteration in original) (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010)))).

Here, because the Court has already determined that, at least on the limited record before it, the Supplemental Complaint Plaintiffs have shown a substantial likelihood that the Challenged Provisions barring all surgical abortions, "except where immediately necessary to protect the life or health of the patient," are unconstitutional, no substantial harm to others can be said to inhere in its enjoinment.  Accordingly, at this stage of the proceedings, the Court finds that any potential harm to defendants resulting from the denial of the motion for an *ex parte* temporary restraining order is outweighed by the threat of irreparable harm to the Supplemental Complaint Plaintiffs and the public interest.

### 5.      Security

Under Federal Rule of Civil Procedure 65(c), a district court may issue a temporary restraining order "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or

restrained." Because the Supplemental Complaint Plaintiffs are "serving a public interest in acting to protect constitutional rights related to abortion," and because defendants "will not be harmed by the order to preserve the *status quo*," the Court waives the bond requirement under Rule 65(c). *Jegley*, 267 F. Supp. 3d at 1111 (E.D. Ark. 2017).

### 6.      Nature Of *Ex Parte* Relief

Pursuant to Federal Rule of Civil Procedure 65(b)(1), the Court issues this *ex parte* temporary restraining order until all parties can be heard on the merits within the time permitted by Rule 65(b).  Counsel for the Supplemental Complaint Plaintiffs certified in writing the efforts made to give notice to defendants and their counsel in this case before filing this motion and explained the reasons why notice should not be required (Dkt. No. 134-18).  Further, in making the determination to grant this relief, the Court reviewed and relies upon the affidavits presented by the Supplemental Complaint Plaintiffs in this matter (Dkt. Nos. 134-2; 134-3) and the proposed verified supplemental complaint (Dkt. No. 132-1), which, along with the record evidence, the Court concludes clearly show that immediate and irreparable loss or damage will result to the Supplement Complaint Plaintiffs before defendants can be heard in opposition.  The Supplemental Complaint Plaintiffs turned away numerous women seeking care at LRFP on April 10, 2020, and would have to do the same each day thereafter for an indefinite period of time due to the Challenged Provisions.  Based on record evidence, there were 8 patients at LRFP to receive surgical abortion care on April 10, 2020, who LRFP had to turn away due to the Challenged Provisions, including a patient at 17 weeks LMP (*Id.*, ¶ 34).  The Supplemental Complaint Plaintiffs present record evidence that, during the week of April 14, 2020, LRFP has 26 patients scheduled to receive surgical abortion care, including:  (1) 12 patients who are more than 10 weeks LMP (*i.e.*, patients who are not candidates for a medication abortion); (2) 8 patients who are more

than 12 weeks LMP and will soon require a D&E instead of an aspiration abortion to terminate their pregnancies if their abortions are delayed; and (3) 3 patients who are more than 17 weeks LMP and will soon require a 2-day procedure instead of a 1-day procedure and very soon will be past Arkansas's legal limit for abortion care (*Id.*, ¶ 46).

IV.   **Conclusion**

For the foregoing reasons, the Court provisionally grants the Supplemental Complaint Plaintiffs' motion for expedited leave to file a supplemental complaint (Dkt. No. 132) and directs the Supplemental Complaint Plaintiffs to file their proposed first supplemental complaint for injunctive and declaratory relief, attached as Exhibit 1 to their motion for expedited leave to file a supplemental complaint, within seven days from the entry of this Order.  Additionally, the Court provisionally grants the Supplemental Complaint Plaintiffs' motion for an *ex parte* temporary restraining order and has under advisement the request for a preliminary injunction (Dkt. No. 134).

The Court hereby orders that defendants, and all those acting in concert with them, including their employees, agents, and successors in office, are temporarily enjoined from enforcing the Challenged Provisions against any providers of surgical abortions in Arkansas to bar all surgical abortions, "except where immediately necessary to protect the life or health of the patient."  Further, defendants are enjoined from failing to notify immediately all state officials responsible for enforcing the requirements of the Challenged Provisions about the existence and requirements of this temporary restraining order.  Pursuant to Federal Rule of Civil Procedure 65(b)(2), this temporary restraining order shall not exceed 14 days from the date of entry of this Order and shall expire by its own terms on Tuesday, April 28, 2020, at 3:30 p.m. CT, unless before that time, for good cause shown and for reasons entered in the record, the Court extends it for a

like period or defendants consent to a longer extension, the Court modifies it, or the Court dissolves

it.

The Court will reconsider these matters upon the submission of defendants' written

arguments.

It is so ordered this Tuesday, April 14, 2020, at 3:30 p.m. CT.

Kristine G. Baker
United States District Judge